**ADVANCED TECHNOLOGY CORP., Plaintiff,**

v.

**ELISKIM, INC., Defendant.**

**No. 1:96CV755.**

United States District Court, N.D. Ohio, Eastern Division.

May 3, 2000.

Carter E. Strang, Henry E. Billingsley, II, Arter & Hadden, William J. Muniak, Janik & Forbes, C. Anthony Stavole, Stavole & Miller, Cleveland, OH, for Advanced Technology Corp., plaintiff.

David G. Ries, Thorp, Reed & Armstrong, Pittsburgh, PA, for Eliskim, Inc., defendant.

## MEMORANDUM AND ORDER

ALDRICH, District Judge.

On February 28, 2000, this Court issued an order granting summary judgment in part and denying summary judgment in part. Currently before the Court is defendant Eliskim's motion for reconsideration. (Doc. # 80). Eliskim asks this Court to reconsider its ruling that there are disputed issues of fact regarding whether plaintiff Advanced Technology Corportation ("ATC") can claim the innocent landowner defense in CERCLA § 107(b), which would allow ATC to pursue a § 107(a) cost recovery action against Eliskim, and this Court's ruling that Eliskim does not have settlement protection from ATC's § 113(f)(1) contribution claim. For the reasons that follow, Eliskim's motion is denied.

## I. Background

The background of this case is more comprehensively set forth in this Court's Order denying summary judgment in part and granting summary judgment in part. *See Advanced Tech. v. Eliskim,* 87 F.Supp.2d 780 (N.D.Ohio 2000). The relevant facts for this order are as follows.

From 1902 until 1980, Eliskim owned a parcel of land referred to in this litigation as the "True Temper Site" and, during the course of its ownership, Elsikim released hazardous materials onto the land, which, among other things, resulted in lead contamination of the soil. Some of this lead contamination occurred on property that is currently owned by ATC, including an area surrounding a quonset hut. In August of 1994, the EPA discovered ATC demolishing the quonset hut, and this destruction created a risk of the lead contaminated soil becoming airborne.[1] The EPA

---

**1.** Whether ATC knew or should of known about this contamination prior to destroying

the quonset hut is disputed by the parties, as set forth in this Court's Feb. 28, 2000 Order.

decided that immediate action was required and entered into an Administrative Order of Consent with ATC (the "ATCAOC"), directing ATC to remove hazardous soil from their property that exceeded 300 ppm lead in order to alleviate the risk of airborne contamination. In accordance with the ATCAOC, ATC excavated an area of soil on the property and, in June of 1995, the EPA notified ATC that their removal action had abated the inhalation risk, approved ATC's close out plan, and noted that the remaining contaminated soils would be addressed in a non-time critical removal action.

In 1997, Eliskim entered into an Administrative Order of Consent with the EPA ("ELIAOC") to remove hazardous contaminants from the True Temper Site. Eliskim's clean-up responsibilities included removal of lead contamination from portions of the land owned by ATC. The ELIAOC makes no reference to the ATCAOC or the soil removal operations that ATC had already undertaken.

In 1996, ATC filed the present lawsuit against Eliskim seeking cost recovery under CERCLA § 107(a) and, in the alternative, contribution under § 113(f)(1). On February 28, 2000, in response to summary judgment motions from both parties, this Court issued an order holding, inter alia, that there were disputed issues of fact regarding whether or not ATC was entitled to cost recovery under § 107(a) and that ATC asserted a valid contribution claim under § 113(f)(1), but that there were disputed issues of fact regarding Eliskim's appropriate share. Subsequently, Eliskim timely filed its motion for reconsideration.

## II. Whether ATC can be an Innocent Landowner

As set forth in this Court's previous order, ATC is a prima facie PRP (potentially responsible party) under CERCLA, because ATC is the current owner of a portion of the True Temper Site. See § 107(a). Eliskim, as the former owner operator who placed the contamination on the land, is also a PRP. Generally, one PRP may not sue another PRP for cost recovery under CERCLA § 107(a); PRP's are instead limited to contribution claims under § 113(f)(1). However, if a prima facie PRP qualifies as an innocent landowner under § 107(b), then that PRP may pursue a cost recovery action. *See Advanced Tech.* 87 F.Supp.2d at 784.

Among other things, to qualify as an innocent landowner in this case, ATC must establish "by a preponderance of the evidence that the release...of a hazardous substance...[was] caused solely by...an act or omission of a third party." CERCLA § 107(b)(3). Consequently, in accordance with the other dictates of the innocent landowner defense and the facts of this case, this Court held in its previous order that ATC must show that:

1. A party other than ATC was the sole cause of the release of the hazardous substances;

2. Eliskim is a liable party under § 107(a);

3. ATC did not actually know about the presence of the hazardous substance at the time of acquisition;

4. ATC undertook appropriate inquiry when ATC acquired the property, in order to minimize its liability; and

5. ATC exercised due care once the hazardous substance was discovered.

*Advanced Tech.*, 87 F.Supp.2d at 785.

This Court found that ATC has proved the first three requirements, but that there are disputed issues of fact regarding the remaining requirements. *Id.* In its motion for reconsideration, Eliskim argues that this Court erred in finding that a third party was the sole cause of the release of the hazardous substances, because it is undisputed that ATC's destruction of the quonset hut exposed the hazardous materials to the air and Eliskim argues that this act constituted a "release."

Under CERCLA, "release" is defined as "any spilling, leaking, pumping, pouring, emitting, emptying, discharging, injecting, escaping, leaching, dumping, or

disposing into the environment" of hazardous substances. Eliskim argues that since ATC's destruction of the quonset hut exposed the lead contaminated soil, ATC's acts were the but for cause of the exposure, and that ATC's actions thus constituted a release. However, Eliskim has not cited a single case to this Court wherein a court has held that a release occurs when a third party unknowingly commits an action which exposes hazardous substances that *had previously been released onto the property by a third party*. A simple hypothetical will illustrate the extremeness of Eliskim's argument.

John wants to buy a five acre parcel of land for residential purposes. A title search reveals that the land has only been used for residential purposes for the last 200 years. Nevertheless, John, being a cautious fellow, conducts an extensive due diligence search, hiring an environmental consulting agency and a law firm specializing in environmental diligence searches. After one year of careful analysis and research, including soil samples taken all over the property, the property is given a clean bill of environmental health by all concerned. However, unbeknown to John, and undiscoverable despite all reasonable efforts, is that 20 years ago, the Xixor Corporation snuck onto the land and deeply buried hazardous material in the vicinity of an old oak tree. Over time, this hazardous material weakened the soil structure, but, at the time of John's purchase, not to such a degree that it was discoverable. A few years go by, and one day John is playing frisbee with his dog near the old oak tree. John throws the frisbee, it hits a branch, and the branch falls. The branch hits the ground and, since the hazardous material has by this time caused sufficient deterioration, a sink hole develops, the ground caves in, and hazardous substances are exposed to the air.

It is hard to imagine a more innocent landowner than John in the above hypo-

thetical, but, under Eliskim's theory of the law, John would be barred from asserting an innocent landowner defense because his actions were a but for cause of the release of the hazardous material. However, this Court is unaware of any court which has held that a current owner, who is completely and reasonably ignorant of the presence of hazardous material on his property, who unwittingly exacerbates the environmental problem, is precluded from asserting the innocent landowner defense. On the contrary, in *Lincoln Properties, Ltd. v. Higgins,* 823 F.Supp. 1528 (E.D.Cal.1992) the court held that "[i]f the defendant's release was not foreseeable, and if its conduct...was 'so indirect and insubstantial' in the chain of events leading to the release, then the defendant's conduct was not the proximate cause of the release and the third party defense may be available." *Id.* at 1542. In *United States v. 150 Acres of Land,* 204 F.3d 698, 2000 WL 38446 (6th Cir. Jan.20, 2000), the case most heavily relied upon by Eliskim,[2] the defendant in question *knew* of the presence of the materials on his land and the question was whether or not the defendant's *knowing* inaction exacerbated the problem.

For the purposes of this Order and summary judgment, ATC is in a situation that is effectively identical to John's in the above hypothetical. There are disputed issues of fact, which will be resolved at trial, relating to whether ATC knew or should have known about the contamination prior to tearing down the quonset hut and whether this action was reasonable considering all factors available. However, resolving those factual disputes in favor of ATC for this Order, ATC had no reason to believe that its reasonable use of its property would expose hazardous materials, placed there by Eliskim, to the air. Thus, ATC is not precluded from asserting a cost

---

**2.** Eliskim filed a supplement to its motion for reconsideration, stating that *150 Acres* was a "new" Sixth Circuit case supporting Eliskim's position. While this Court did not cite to *150*

*Acres* in its February 28, 2000 Order, this Court did consider *150 Acres* in reaching its determination at that time.

recovery action via the innocent landowner defense.

This Court reiterates its holding that Eliskim released all of the hazardous material in question onto ATC's property. Nevertheless, in order to fully qualify under the innocent landowner defense, ATC will bear the burden of proving at trial that they undertook reasonable and appropriate inquiry before obtaining the property, and that they did not know of, or should not have known of, the presence of contamination when they tore down the quonset hut. Additionally, ATC will be precluded from claiming status as an innocent landowner if, in light of all available evidence, ATC had reason to suspect that tearing down the quonset hut might have adverse environmental effects.

## III. ATC's Contribution Claim

In its previous Order, this Court held that ATC was entitled to contribution for ATC's clean-up actions under the AT-CAOC, but that there were disputed issues of fact regarding what share should be attributed to Eliskim. In so holding, this Court rejected Eliskim's argument that the ELIAOC provided contribution protection to Eliskim against ATC's claim under CERCLA § 113(f)(2). In their motion for reconsideration, Eliskim argues that this Court erred in holding that protection can only be forward looking and cited a Third Circuit case which held that contribution protection could immunize a settlor from claims by an earlier settlor (after that court found that the Administrative Consent Order in question explicitly referenced the earlier settlor). *See United States v. Alcan Aluminum,* 25 F.3d 1174, 1186 (3rd Cir.1994).

■ Eliskim's misreads this Court's February 28, 2000 Order, however. The question of whether the government *can* provide contribution protection against the claims of prior settlors was not before this Court, and this Court expresses no opinion on that question. This Court found that ATC's prior clean-up activity was not a "matter addressed" in the ELIAOC and

that therefore the ELIAOC did not provide contribution protection to Eliskim from ATC's claims. *See* CERCLA § 113(f)(2) and *Advanced Tech.,* 87 F.Supp.2d at 786–87. Consequently, the question of whether the government can provide contribution protection against prior settlors, the point addressed by the Third Circuit in *Alcan,* and the basis for Eliskim's motion, was never reached by this Court.

To provide further clarity, § 113(f)(2) of CERCLA states that:

A person who has resolved its liability to the United States or a State in an administrative or judicially approved settlement shall not be liable for claims for contribution regarding matters addressed in the settlement. Such settlement does not discharge any of the other potentially liable persons unless its terms so provide, but it reduces the potential liability of the others by the amount of the settlement.

Thus, as § 113(f)(2) literally states, settling with the government only provides protection from contribution actions regarding matters addressed in the settlement. Eliskim argued that the scope of the matters addressed in the ELIAOC included the clean-up operations undertaken by ATC, because ATC was required to clean-up a portion of the True Temper Site and the ELIAOC directed Eliskim to clean-up the entire True Temper Site. This Court disagreed with Eliskim's interpretation, and, relying on the rationale set forth in *United States v. Charter International Oil,* 83 F.3d 510 (1st Cir.1996) (in which the First Circuit, with significant analysis, agreed with the government's and the district court's interpretation of an administrative consent order as not providing contribution protection against prior settlors in that particular case) found that the ELIAOC did not provide contribution protection against prior settlors—i.e., ATC.

■ This Court holds that an Administrative Consent Order will not provide contribution protection against a prior settlor,

unless the Administrative Consent Order clearly indicates that it was the government's intention to provide such protection. Whether such protection is allowable under CERCLA, if the government chooses to provide for it, as it did in *Alcan*, is a question of statutory interpretation on which this Court expresses no opinion. But holding that clean-up actions by prior settlors will not generally be considered a "matter addressed" in an Administrative Consent Order, unless, at the least, the Administrative Consent Order clearly indicates that it was the government's intention to do so, is completely consistent with the theory and approach of CERCLA. The final sentence of § 113(f)(2) states that "settlement does not discharge any of the other potentially liable persons unless its terms so provide, but it reduces the potential liability of the others by the amount of the settlement." § 113(f)(2). Accordingly, if three parties, X, Y, and Z are liable for a $50 million clean-up and X settles with the government for $10 million, Y and Z can only be held liable for $40 million. Consequently, if Y later settles with the government, simple logic tells us that Y is settling with respect to the remaining liability; i.e., $40 million. Therefore, unless Y's settlement agreement explicitly states otherwise, it would be illogical, and inconsistent with CERCLA, to find that a general settlement agreement with Y will provide protection from X's contribution claims, because Y was only settling with the government with respect to the remaining liability, which was $40 million, not the original $50 million.

The same holds true in this case. ATC settled with the government and performed clean-up operations on a certain portion of the True Temper Site. It is clear that the hazardous materials removed by ATC in 1995, were not there in 1997 for Eliskim to remove.[3] Consequently, when Eliskim settled with the government in the ELIAOC to remove hazardous materials

on the True Temper Site, it was not settling in regards to hazardous material already removed by ATC. If the ELIAOC had explicitly stated that it provided protection from contribution claims by parties who had already incurred response costs, then this Court could address the question that forms the basis of Eliskim's motion for reconsideration. But since this Court holds that ATC's clean-up actions were not "matters addressed in the" ELIAOC, the question raised by Eliskim in their motion for reconsideration is moot.

## IV. Conclusion

For the foregoing reasons, Eliskim's motion for reconsideration is denied.

IT IS SO ORDERED.

---

**3.** There are disputed issues with respect to the effectiveness of ATC's clean-up. The resolution of these facts at trial will determine what, if any, portion of the costs should be contributed by Eliskim.